May it please the court, Richard DeRibertis for Plaintiff's Appellants. I'd like to, if I can, reserve two minutes for rebuttal. There are several threshold legal issues before this court that have been dividing the district courts around the country. The first is, can one predicate 1442A1 removal jurisdiction on mere allegations? Or, as for all other assertions of federal jurisdiction, is 1442 subject to a factual attack? Assuming there's nothing special about 1442... We said it's special. Pardon? We said it's special. In fact, I think I said it. Your Honor, it's... So it carries a lot of weight in this courtroom, at least a third. We said it's special. We said, you know, some jurisdictional statute we construe narrowly, but not this one. This one is different. So, you know, you said unless there's something special, I think you can assume there's something special, because we actually have an opinion saying that. It's different than other removal statutes in that it's not to be construed narrowly. That makes it special. But every assertion of federal jurisdiction is subject to a facial attack. This Court has never, ever said that 1442A1 is not subject to a factual attack. We're going to have a mini trial? No, no, not at all. All you have to do is have one piece of admissible evidence. When there is a motion to remand making a factual attack on 1442A1, all you have to do is have one piece of admissible evidence showing a causal connection. This Court, the Ninth Circuit, the Supreme Court has said causal connection is an element for removal under this statute. That is the law. Congress itself, when it passed the 2011 Removal Clarification Act, said causal connection is an element. And to actually quote, don't you like it in federal court? Why are you so anxious to get this back to state court? We're nice. I mean, we're just litigating about where, the forum, right? This is not substance. This is a question of whether or not you litigate your case in state court or federal court. We have a federal policy involved here. That's an issue that's in dispute. But, you know, there it is. Why not litigate the case in federal court? Well, I think the question is why do defendants want to litigate in federal court? And we can ask them. If you want the direct answer for the actual circumstances here, it's because in state court we get fast trial dates. In federal court we are told by our judges there's no such thing as a firm credible trial date because the criminal calendar always goes first. But this begs the issue as to whether or not there is removal jurisdiction. Can mere allegations do it or do you need to have one piece of credible evidence? Every other assertion of jurisdiction says that there could be a facial attack or there could be a factual attack. And if there is a factual attack which goes to the merits, which this would, then you use summary judgment standards. When you are a federal officer or when you are an agent of a federal officer, it is the easiest thing in the world, the easiest thing in the world to have an affidavit saying I'm an FBI agent or in the cases from the Seventh Circuit, FBI agent saying this person was working on a sting operation with me so he's working under my direction. If this is not a summary judgment standard but a 12 v. 6 standard, do you lose on this record then? If mere allegations are enough. Well, mere allegations and supplemented by affidavits. If the affidavits were admissible, they were. Why do they have to be admissible? Because the affidavits are based upon speculation. These are people who never did anything, never had the opinion that if defendant would have asked permission to warn end users about the dangers of asbestos in 1960, the Navy would have said no. That type of expert opinion has never, ever flown in any court, ever. It doesn't even raise to a Galbert standard. It has always been the rule, always been the rule that speculation and conjecture is inadmissible. It has always been the rule that a witness cannot opine that somebody would have done something different if something that didn't happen would have happened. It's always been the definition, the definition of conjecture. It's always been the rule that experts cannot opine as to the meaning of a federal rule. You want to make this a factual issue but you don't want to have any evidence on it. How exactly do they prove up? You're bringing a claim based on events that happened a long time ago and you're saying, well, it's too bad. You can't bring any evidence that this was in fact subject to federal policy because everybody's dead or everybody's gone that can testify about it. Oh, no, no, Judge. They've had 20 years. They've had 20 years to look for one shred of evidence that supports their Boyle defense. This has been going on for 20 years and they cannot find anything. These are federal contracts, federal specifications that are still in existence. Counsel, let me just stop you for a second on the evidentiary point because I tend to agree with you on that point. The problem I have, I guess, is this Getz case. It just seems to me it sets a very different standard in terms of the substance of the defense. And let me just tell you how I read it and then you tell me where I've gone wrong, certainly. I read that case as saying all the defendants have to show now in the failure to warn context, right, is that the government made some kind of a discretionary decision about which warnings to provide and you can see that that did occur here, right, with respect to their products. I would not concede that. Okay, well, the government made some discretionary decision about which warnings to provide. The defendants, in fact, complied with that decision by, let's say, providing warning on risk A and risk B. They did so and the government knew as much as the defendant did about the risk that you say should have been warned about. And that's all that needs to be shown in order for them to prevail on the defense. Am I wrong on that? Without respect, Goetz is a case that supports the plaintiffs. Just read it in terms of the facts that it says. In Goetz, first of all, Goetz is just like Tate and just like another case in the Fifth Circuit. It all involves the equipment being military aircraft. The end user is the pilot, and the only way that the manufacturer can communicate to the pilot is through an operator's manual. The duty to warn is a... I understand. Goetz is different because the government is the one who wrote the manual. I get that. Okay. But I'm saying the general standard that Goetz articulated is much broader than the facts of that case. And so maybe you can just tell me the three elements that I just ticked through. Am I wrong on one of them? Yeah. The government, Goetz cited the Seventh Circuit Oliver case, which wasn't even a real warning case. How do you warn? Say, don't crash in the back of a car. It'll explode. What Goetz said was, this means that the contractor must demonstrate the government approved reasonably precise specifications, thereby limiting the contractor's ability to comply with its duty to warn. That is not here. There are no... Where are you reading from? I'm reading from Goetz. It's page 866 right after they quote Oliver. All the defense... Those are 866? 866, yes. There is nothing in this record that limited Crane's ability to warn about... Well, okay, so keep reading on 866 under Roman 4. Go down to that quote from the Seventh Circuit case, and there are the three elements that I just said, right? Or am I misreading that? Because that's... I see the three elements laid out there, and they are... It's not what you're talking about. They don't have to prove this hypothetical, well, if we had tried to warn, the Navy would have prohibited us from doing that. I don't read Goetz as saying that that's what they have to prove at all. If the court is saying that they can warn about how to fight electrical fires with carbon dioxide, and that's exercising discretion on whether or not to warn about asbestos, then we are rewriting the Boyle decision. We start from the premise that the defendants knew that asbestos could cause harm in their products, right? Yes. And you concede that the government knew as much as the defendants did, right? It's irrelevant for this analysis, but yes, I do. So the government knows about the very risk that you say should have been warned about. They say to defendants, with respect to your products, warn about risk A and B, but not C, not the asbestos risk. That's what we're telling you to do, and they do it. To me, that is exactly what Goetz says they, that's all they need to show. There was never any, Goetz talks about having back and forth about the warning and the danger at issue. There was no back and forth between the Navy and any defendant on asbestos warnings. They have, their own experts even admit that. They've gone through all the files, they cannot find one shred of evidence there was any back and forth between the Navy and any equipment manufacturer. The government knew about the risk and specified warn about these other two risks or three risks or whatever it is, and didn't tell them to warn about the risk that they knew about. And so I read that as a discretionary decision on the government's part not to warn about the asbestos risk, and the defendants complied with that. With respect, I would think that that analysis is flying into the face of what the Dubai courts did in the First Circuit, where you're implying a policy judgment when none was made. In other words, your point, it was never raised, so we don't know what the government would have said if they had approached the government or they had suggested that a warning be about asbestos be placed. Exactly. Even though the government knew, and it is relevant whether the government knew under the three-pronged test, it has to be something that the government wasn't aware of. But so you get, it is that they were aware of, but neither party engaged on it. So how do we know that the government exercised its discretion? Because we know they didn't because there was no back and forth, and we cannot confuse... We know because the government, by your concession, knew about the risk, and it specified these other risks to be warned about and didn't include that one. That's how we know the government made a discretionary decision, right? Judge, the military specification at issue for writing technical manuals says give warnings. It doesn't say what warnings to give. It's a general, imprecise specification that says give warnings. There is one precise specification, which is the 1956 Uniform Labeling Act by the Navy, and that should really end the matter right here. This is a written Navy policy that says that this instruction is not intended to govern the type of labels to be affixed by the manufacturer. These are governed by state and federal laws. This is official Navy policy from 1956 saying manufacturer warnings are governed by state law. That is the only expressed policy by the Navy on manufacturer warnings to end users. I'm not sure I understand your answer to Judge Watson, but he says, look, the Navy knows about it and decides to issue some warnings and not that one. I'm listening here to your answer to that, and I don't get it. I mean, why isn't that a policy, Judge? The Navy is aware of a risk. It warns of certain risks. It doesn't warn of this risk. Why isn't that enough? We have to be careful which duty to warn we're talking about. There's a duty to warn under, which is the third prong of Boyle, which is not at issue here. The duty to warn is a tort law duty to warn end users imposed by state law on manufacturers to warn end users. The only issue is, is there any Navy policy that would constrain or restrict that duty to warn? Get said to limit, limiting that duty. There is nothing that limits that manufacturer's duty to warn end users. In fact, it's expressly allowed by official Navy policy. Okay. Can I, because you're over time, I just want to circle back to the question that Judge Kaczynski posed. There are strong policies articulated in our precedent for why the government has an interest. It isn't just the contractors. The government has an interest in getting its contractors' liabilities litigated in federal court, that they get a federal forum. So let's suppose that we disagree with you that it has to be a slam dunk summary judgment type of standard, but rather there was sufficient showing that the Boyle defense was plausible. There was a colorable argument. Okay. It's colorable. And we don't hold the affidavits out of the question because they aren't ultimately admissible. The case goes forward. Now you're in federal court litigating over whether the, in fact, the Navy had a policy and that it would have been a conflict. You're not disabled from knocking out the federal official defense if you can establish that, in fact, the Navy never would have opposed. They never did consider it. It wouldn't have been a policy. You could still litigate that, can you not, in federal court. Yes, we can. But it's the precedent of the Supreme Court, the Ninth Circuit, as well as Congress, that to remove under this statute, you need a causal connection between the charged conduct and the asserted official authority. Removal is allowed only when the acts of the federal defendant are essentially ordered or demanded by federal authority. But it's still a colorable argument, right? There has to be a colorable argument. I'm saying there's a colorable argument. We disagree with you. You're in now federal court. So you can still prove that, as a matter of fact, there was no causal. There has to be a colorable defense, but there has to be causal connection. Causal connection has always been proven by affidavits of people with knowledge that are admissible. It's usually a very easy standard to make. But as the Ninth Circuit said in 1990, with the Boyle defense, every government contractor is going to start claiming the Boyle defense. So we have to look at its underlying analysis with some care. There has been no discretion on the issue at hand, asbestos warnings by manufacturers and end users. They were allowed in 1966 when the insulation manufacturers warned end users. They didn't ask the Navy's permission. They were allowed when Crane in 1985 just began warning on its own about asbestos, never asked permission to the Navy. In 1987, when Buffalo Pumps began warning about asbestos, they never asked permission to the Navy. They just warned. There's never been any military, Navy discretion on the issue of warning by the manufacturers to the end users. We're not saying that the manufacturers should tell the Navy how to run its health programs. That's how defendants try to frame the issue. Duty is not from – I'm not alleging a duty for Crane to tell the Navy how to run their system. There's a statewide duty that runs from manufacturer to end user. And the only question, the only question is, is there any Federal preemption under Boyle? And there has to be an exercise of discretion on the actual issue at hand for Boyle. Thank you. Your Honors, may it please the Court. Michael J. Ross on behalf of Appleby Crane Co. Your Honors, the question at the heart of this appeal is how stringent is the colorable Federal defense requirement for Federal officer removal? The plaintiffs want a full-blown merits determination at the removal stage, complete with evidentiary objections and findings of disputed facts. That's inconsistent with the Supreme Court's decision in Willingham v. Morgan. There, the Court made it very clear that the purpose of the Federal officer removal statute is to have Federal defenses heard and decided in Federal court. If at the removal stage, a court has to conduct this merits determination, it can never give effect to the statute. Cases would be removed, only to be remanded automatically. Well, let me ask you this. Yeah. Because I think it's pretty clear in just about every other, with respect to every other removal statute, that if the defendants, you know, the Venant can file the removal petition, make the allegations, let's say, as to diversity of citizenship or the amount of controversy, right? Make those factual allegations. The case law is crystal clear that if those are challenged by the other side, the defendant actually has to come forward with admissible, competent proof to back those up, right? Yeah. So why would a different standard apply under 1442? I think it should, Your Honor, and the reason would be this Court has held in a number of decisions that when a Federal claim, when the merits of a Federal claim are intertwined with the facts giving rise to subject matter jurisdiction, a different set of standards applies. In that instance, a district court is not to resolve the disputed issues of fact. Rather, it's to review the allegations made in support of the Federal claim and only dismiss on subject matter jurisdiction grounds. Right, but that's covered by the colorable modifier of the standard. Yes. You don't have to come in and prove it. Hey, if you let us in, we're going to win. I understand that. But if you come forward, let's just say you come forward. You say, hey, we can make out the three elements of the Getz test. Yes. And the other side says, no, you can't. That's just flat out wrong. And you come back with three pieces of evidence, each of which is just plainly inadmissible. You've got nothing else. On what basis are we supposed to think that you've got a colorable claim to make? If the allegations we've pled subject to Rule 11 would establish a plausible good-faith claim for the elements of Getz, then under Willingham. Does it come forward with any admissible evidence to back that up if you're challenged? That's correct, Your Honor. Where do you get that? Willingham v. Morgan. I don't think that case gets you there. I mean, you point me to where you think the court held that. I'll look at it. But when I read that case, I didn't see that. In Willingham, Your Honor. Show me where you're looking at. Okay. That's the last page of the decision, I believe. All right. And the issue the court was deciding was the removing defendants alleged that their only contact with the plaintiff occurred in the course of performing their official duties. The plaintiff argued, no, that's completely wrong. You guys were on a frolic of your own, and so you weren't carrying out your official duties whenever you harmed me. The Willingham court held that that dispute, which went to the heart of the immunity defense the defendants presented, was one for the district court proceedings. It was not to be resolved. I'm looking at the last page of the majority opinion. Just what language do you want me to focus on? Well, I'm sorry, Your Honor. I'm trying to explain the holding that the court reached, which was the factual dispute was not to be resolved at the removal stage. There's not particular language you want to focus me on? I don't believe so, Your Honor. Okay. Consistent with Willingham here, Cranko has alleged and additionally submitted to the district court a number of affidavits from expert witnesses that go to each of the elements outlined by this court in the 2011 decision in Getz for the government contractor defense in the failure to warn context. Cranko sold vows to the U.S. Navy. Those vows were subject to detailed military specifications that were developed by federal officers employed by the Department of the Navy. I don't think there's any dispute about that. In some instances, those specifications required Cranko to include asbestos-containing component parts in its equipment. I don't think there's a dispute about that. Those specifications also govern the product literature, labeling, and warnings that Cranko submitted with its equipment. I'm not sure there's a dispute about that either. Recently, the Seventh Circuit in the Ruppel decision concluded that on the basis of the same essential allegations, a district court erred in remanding a case, an asbestos case like this one, like these two cases, that were removed on federal officer grounds by a Navy equipment supplier like Cranko. In that case, it was Westinghouse. In the course of overturning or reversing the district court's decision to remand, the Ruppel court addressed, I believe, what is the primary argument plaintiffs present here, and it was touched on earlier, and that is that in order to get the benefit of the government contract of defense, a defendant has to show that it was prohibited from doing the very act, from here giving the very warning that plaintiff claims the defendant's equipment should have had. The Ruppel court rejected that standard, relying in large part on this court's decision in the Getz case in 2011. The Ruppel court held that so long as the contractor can show the Navy exercised, well, it was the Navy. It seems to me that is really the crux of this matter, right? It's not really about the evidence or whether your guys' declaration is speculative. It's really about what substantively you're going to have to show to prevail on the defense, right? Yes, Your Honor. Because if, in fact, you had to show that, for example, you had tried to warn and the Navy told you no, we don't, no thanks but no thanks, we don't want that warning, you would be in a much more difficult position because I don't know that your science speculation about what might have happened 50 years ago, whenever it was, would be admissible. But what I hear you saying, though, is that you don't even need that part of their opinion testimony. You just need the basics about what specifications the Navy, in fact, promulgated and then what your clients did in response to that. Your Honor, we believe that, yes, yes, in short, if reading Getz and reading Ruppel and several other decisions, the Tate decisions from the Sixth Circuit, that although, and I believe it was the Thompson judge in the Thompson case, although if a contractor could prove that it was prohibited from doing the very thing at issue, then certainly it would qualify. But it need not make that proof. Well, what about our decision in Hawaii federal asbestos cases, where on the very issue we're talking about of failure to warn, we held that there was no evidence that they ever presented the issue to the government and there was no evidence to show that they were precluded from using the warnings. Why doesn't that control here? Well, Your Honor, I believe that that decision was interpreted later by certain litigants to mean that this prohibition requirement exists. And in Getz, the Court clarified, it certainly didn't overrule it in Hawaii, but it clarified that that decision does not impose a prohibition requirement. So whether the Navy, whether Cranco ever proposed an asbestos-related warning and was told by the Navy, no, you can't do it. But as we said, they've simply failed to allege, let alone establish, that in making their decision regarding warnings, they were acting in compliance with reasonably precise specifications imposed on them. Boyle displaces state law only when the government, making it a discretionary safety-related military procurement decision, contrary to the requirements of state law, incorporates this decision into military contractors' contractual obligations, thereby limiting the contractor's ability to accommodate. Your Honor, I'm sorry. You're saying Getz walked back from that? Not that it walked back from it, but it clarified that one possible conclusion from that language, that you must prove you were prohibited from doing it, is not a correct conclusion. And I believe, Your Honor, the first part of what you read there concerned the notion that these the contractors, well, alleged contractors at issue in Inree Hawaii couldn't point to any specifications governing the warnings on their product. That's what the Court indicated. That's not the case here. Well, what's troublesome about this is that you get right up to the edge of the failure to warn. So a lot of these cases aren't failure to warn. They derive from design defects. So when we get to the failure to warn, it's curious that when a company has a duty imposed by state law to warn consumers or workers or whomever about the dangers inherent in asbestos, that you don't have any evidence that the issue was ever presented. In other words, that Crane ever went to the Navy and said, we have this concern about asbestos. I don't know whether they complied with the law on their non-Navy products, but in any event, we're left to speculate. Indeed, that's your evidence, is speculation about what the Navy would have said if it had been presented. Well, Your Honor. And part of it is we let you get into federal court. Is it not true that if you don't prevail on that defense factually at the next stage where there is a summary judgment standard, if we don't apply it at the outset, would you not lose? Or do you think that under a summary judgment standard, you could prevail? Well, I believe, Your Honor, we certainly wouldn't. I don't know that we could win on our defense at summary judgment. I certainly grant the Court that. I believe that Crane Co. could raise a factual dispute regarding the elements applicable under Getz at the summary judgment stage. The party's briefing is largely a dispute as to the extent of discretion the Navy exercised. And I believe, Your Honor, you hit on it. This is not the summary judgment stage. We are at the removal stage, subject to this colorable, plausible defense determination. And we submit that the district court here committed no error in finding Crane Co. Well, but counsel counters on that, saying then you have to go to the causal nexus. And I'm still trying to understand how this plays out. Assuming we go with the colorable argument and, as the district courts indicated, causal nexus, assuming less than a summary judgment standard, gets bound up in the other issue. But wouldn't you have to show by more than speculation that there was a causal nexus as to why the warnings weren't given? Well, number one, Your Honor, I would push back against the notion that the expert affidavits that we've submitted are speculation. These are admirals who were employed by the Department of the Navy and were charged with interpreting and applying military specifications for decades. I would challenge that. But to Your Honor's question, the causal nexus requirement simply asks, or simply focuses on, and I would cite again the Willingham decision, were the actions complained of in the lawsuit taken pursuant to federal directives? In this case, were the actions complained of actions that Crane Co. took while fulfilling these government contracts? And the answer to that is yes. I don't believe there's any authority for the notion that the specific failure to warn must be directed by the government in order to establish the causal nexus requirement. Well, it's proven it's not that they were directed. It's just that the Navy did nothing to prohibit. It was just Crane's decision on its own hook that it decided not to comply. That's the other side of the coin. That's certainly the dispute of fact that the parties have, Your Honor. Thank you. Thank you. You are way over your time. Would you like to take a minute for rebuttal? Thank you. Just a minute. Wilmington v. Morgan is dispositive. In that case, the causal connection was established by affidavits that the Supreme Court said should have been with removal petition, but What was the case? Wilmingham v. Morgan. 395 D.U.S. 402. As far as the issue before the court, Boyle says reasonably precise specifications addressing the design feature at issue. Getz said if you don't have that, you at least need back and forth between the military and the contractor on the design feature at issue. There was no back and forth. Their own evidence says there was no back and forth. The only military specification they have was general. And Hawaii Federal gets control. Crane sold asbestos gaskets and packing to the Navy without warnings. Therefore, under Hawaii Federal, there was no Boyle defense for their direct sales of gaskets and packing to the Navy. Do you think that Hawaii Federal is still controlling, notwithstanding the fact that Getz comes along many years later and seems to go in a different direction? I interpret Getz the way I think the court interprets it, that if you give a warning and the government approves that warning, then the plaintiff cannot allege of inadequate warning. You cannot allege there should have been a more alarming warning. That's what Getz holds. That's what Getz holds. And the facts in Getz actually precluded the contractor from giving a warning because it wouldn't allow the contractor to even write the manual in the first place. Okay, thank you. Case is hired. Sentence removed.
judges: Kozinski, Fisher, Watford